## THE PEOPLE v. ACOSTA.

## APPEAL from the District Court of Humacao.

### No. 8.—Decided June 29, 1906.

APPEAL—EVIDENCE—BILL OF EXCEPTIONS—STATEMENT OF FACTS—STENOGRA-PHER'S NOTES.—In order that the evidence taken at the trial may be considered on appeal, it is necessary that the same be set forth in a bill of exceptions or a statement of facts, and the stenographer's notes cannot be used as a substitute for either of these documents.

REORANIZATION OF THE JUDICIARY.—The reorganization of the district courts by the Act of March 10, 1904, was effected by the Insular Legislature under ample authority conferred thereon by section 33 of the Organic Act.

GRAND JURY—INSULAR COURTS.—The provisions of Article V of the Amendments to the Constitution of the United States cannot be deemed to be in force in Porto Rico, in the absence of an act expressly so providing, and therefore, those provisions are not applicable to the insular courts, where indictments of grand juries are not necessary in order that defendants may be convicted therein.

PRELIMINARY PROCEEDINGS—INFORMATION.—The preliminary proceedings instituted by the *fiscal* in the investigation of a crime, forms no part of the record of the case, and the *fiscal* is not required to present the same in the district court, before which the prosecution is commenced by merely filing the information.

ID.—DEFENDANT DESIGNATED BY WRONG NAME.—Where a defendant is designated in the information by a name not his own, the error is of no importance, except where it appears from the record that section 143 of the Code of Criminal Procedure has been violated, and where the defendant has made objection thereto; otherwise the court will be presumed to have proceeded according to law.

ID.—SUFFICIENCY OF INFORMATION.—Where an information fulfills the requirements of section 82 of the Code of Criminal Procedure it is sufficient, especially if it is drawn in such a way that any person of ordinary intelligence may understand what it means.

ID.—MURDER.—The word "perpetration," used in the English text of section 201 of the Penal Code, means the commission of any of the acts to which the said word refers, and when, in an attempt to commit burglary one person kills another, it is not necessary to allege in the information that the killing was wilful, deliberate and premeditated.

STATUTORY CONSTRUCTION — DISCREPANCIES BETWEEN ENGLISH AND SPANISH TEXTS.—Where discrepancies exist between the English and Spanish texts of a statute, the English will prevail, because the English copy is signed by the Governor, and the Spanish must therefore be subordinated thereto.

VERDICT OF JURY.—Where a jury states in its verdict that it finds the defendant guilty, it must be deemed to have declared the defendant guilty.

JURY.—The provisions of section 199 of the Code of Criminal Procedure limiting to 24 the number of jurors to be drawn, refer to the jurors in attendance for the ordinary criminal business of the district courts.

ID.—The court has authority, under the provisions of section 202 of the Code of Criminal Procedure, in certain cases, to summon other jurors than those ordinarily in attendance, and any objections which the defendant may wish to make to the panel, should be made in the form of challenges, in accordance with the provisions of section 218 of said Code, and if a defendant makes no objection to any irregularities committed, he will be deemed to have waived his right so to do.

The facts are stated in the opinion.

Mr. *Pérez Moris* for appellants.

Mr. *Rossy, fiscal,* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

An information filed in the District Court of Humacao against Cándido Acosta, Anselmo Acosta and Viviano Alicea and Antonio Acosta for the crime of murder in the first degree, and the essential part of the information reads as follows:

"That on or about the night of the 26th or 27th of September, 1905, in the perpetration of a burglary by the accused, Cándido Acosta, Anselmo Acosta, Viviano Alicea and Antonio Acosta, in the store of Tomás Caballero, in Caguas, and within the judicial district of Humacao, P. R., the said accused persons, Cándido Acosta, Anselmo Acosta, Viviano Alicea and Antonio Acosta, then and there illegally and with malice aforethought, killed and assassinated the said Tomás Caballero, inflicting many wounds upon him with a sharp instrument, from the result of which he died within a few moments. This act is contrary to the form, efficacy and purpose of the law for such case made and provided, and against the peace and dignity of The People of Porto Rico."

When the case was called for trial Viviano Alicea was sick, and at the request of the *fiscal,* the court ordered that he be tried separately. The case against the other three accused persons was tried before a jury which found as follows:

"We the jury find the prisoners, Cándido Acosta, Anselmo Acosta, and Antonio Acosta, guilty of the crime of murder in the first degree."

By reason of this verdict the court sentenced the prisoners to the penalty of death, and from this sentence the defendants have prosecuted an appeal to this court. Being unrepresented by counsel in this court, an attorney was appointed to represent them, who asked to be relieved of the responsibility and the court acceded to this request. Subsequently the court appointed Attorney N. Pérez Moris to represent the appellants. The attorney thus appointed has shown considerable zeal and industry in the performance of what was necessarily a disagreeable and arduous duty. It is, however, to be regretted that he should have gone out of his way to criticise not only the previous actions of this court, but also to impugn the actions, and possibly the motives of the judge who tried the case in Humacao. We cannot but censure the character of the comments made by the attorney for the appellants with respect to the instructions given by the court below, and there is nothing in the record to justify such comments. Counsel is also under a misapprehension of what the function of the Supreme Court of Porto Rico is, when he complains of the refusal of this court to add to the record the stenographic notes taken at the trial below. The powers of this court are those that are defined by the Organic Act, and the laws subsequently passed by the Legislature of Porto Rico, and it has no other powers of revision than those conferred upon it by such Act and such Legislature. It is to the Code of Criminal Procedure and the laws made in connection with the same, or altering them that we must look for the methods and manner of correcting the proceedings or errors of the trial court.

Section 356 of the Code of Criminal Procedure prescribes what the secretary of the district court should remit to the Supreme Court. If the law directs or allows a person accused of crime to avail himself of certain exceptions for the purposes of an appeal he must nevertheless perfect the transcript or record required of him in the manner which the law prescribes.

The record before us contains certain essential things.

It does not contain the proof taken at the trial, but this omission is explained by the certificates of the secretary that no statement of facts or bill of exceptions had been presented to the court.

It is always a matter of serious regret, especially in a criminal case, if the attorney for a defendant fails to save in a proper bill of exceptions or otherwise the state of the evidence. The legal aspects of this question have been considered by us in various cases, notably the cases of *The People of Porto Rico* v. *Juan de Mata Eligier, People of Porto Rico* v. *Francisco Dones, People of Porto Rico* v. *Felipe Robles,* and *People of Porto Rico* v. *Julio Rafael Brenes.* This court cannot make the record. We can only pass upon the record as presented to us. *The People of Porto Rico* v. *Brenes* is authority for what constitutes a record on appeal. The record having been made the attorney for the appellants had merely to take the record as he found it, and add to it if there was any legal way of doing so, and to point out errors, if any, which were to be found in the transcript as finally constituted.

The appellant alleges that the trial court was incompetent substantially for the reasons that such court was required by section 33 of the Organic Act to continue composed of three judges until changed by the law of Congress. This question has been decided by this court in the case of *The People of Porto Rico* v. *James E. Kent.* It was also one of the reasons assigned in the application for the writ of *habeas corpus* in the case of *The People of Porto Rico* v. *Francisco Dones,* and the order of this court denying the application for the writ of *habeas corpus* has been affirmed by the Supreme Court of the United States, and the question is finally closed.

The second question raised by the appellant is that there was no indictment by a grand jury as is required by the fifth amendment to the Constitution of the United States. The lack of a grand jury in Porto Rico for the purposes of presentment would not avail the appellant, and it has been held in the case of *Hawaii* v. *Mankichi,* 190 U. S. Reports, page 207,

that the conviction of one who was tried on information and convicted by a jury not unanimous, in accordance with the legislation of the Republic of Hawaii is legal, notwithstanding that it was not in compliance with the provisions of the fifth and sixth amendments to the Constitution of the United States. It is authority for holding that the fifth amendment to the Constitution cannot be held to apply to Porto Rico without direct legislation for that purpose.

The attorney for appellants next alleges error because the *fiscal* did not present with the information the *diligencias* or criminal information. Counsel relies on sections 98 and 131 of the Code of Criminal Procedure, but there is nothing in either of these sections of the law which requires such action on the part of the *fiscal*. Section 98 refers to the proceedings before a justice of peace, but we have decided in the case of *The People of Porto Rico* v. *Antonio Paz* that the *fiscal* need not begin proceedings before such officer. Section 131 relates to the arraignment of the defendant and has apparently nothing to do with the matter under discussion. The Code of Criminal Procedure makes the proceedings in the District Court begin with the information. See section 67 of that Code.

With respect to the fourth point raised by the attorney for the appellants, namely, that one of the defendants is called by the wrong name, there is nothing in the record which shows any infringement of article 143 of the Code of Criminal Procedure, requiring the defendant to be advised that "if the name by which he is prosecuted is not his true name he must then declare his true name or be proceeded against by the name in the information." Nor is there anything to show that any objection was made by the defendant on this account, and it may be presumed that the court below took the proper steps in connection with the arraignment of the defendant as prescribed in such article.

Counsel spends a great deal of time in discussing the alleged ungrammatical nature of the information. It makes

no difference if the information is ungrammatical, provided it can be understood. The information may not have been written in the best possible Spanish, but the words are sufficiently intelligible for the three persons accused to have understood the crime with which they were charged. No motion was made to strike out the information or dismiss it, and following the precepts of article 82 of the Code of Criminal Procedure, relating to the sufficiency of an information, this first pleading on the part of the Government must be held to be good, if for no other reason, because "it would enable a person of common understanding to know what was intended."

In further discussing the information, which is the fifth point raised by counsel for the appellants, it is contended that the information fails to follow the Penal Code in charging the crime. Counsel in his argument maintains that there is neither an English nor a Spanish text of the laws in force in Porto Rico; that there is a Penal Code, and that such Code must be interpreted most liberally in favor of the defendant, and if words favorable to him can be found in either text, he must be given the benefit of such favoring words.

We have, however, decided in many cases, that the English copy signed by the Governor is the one that must prevail in case of doubt. The Spanish version of section 201 of the Penal Code does not include "escalamiento," but the word "burglary" does appear in the English copy, and the English copy of this section of the laws of 1902, is a correct transcript of the original law passed by the Legislature.

Section 201 in English is as follows:

"All murder which is perpetrated by means of poison, lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem is murder of the first degree, and all other kinds of murders are of the second degree."

We cannot see that the appellants suffered any injury by

reason of the error in the Spanish copy. The same thing is true of the words *"malicia expresa y premeditación,"* which appear in the Spanish text. The information itself was not lacking in the proper averments. We also think it appears from the information that the accused persons, while perpetrating the burglary killed Tomás Caballero. The word "perpetration" as used in the English text means the commission of the act to which the word refers. Where, in an attempt to commit a burglary a human being is killed, it is not necessary under section 201 to allege that the murder was wilful, deliberate or treacherous, as counsel maintains, and similarly it is unnecessary to consider the failure to speak of treachery in the information.

Under the sixth point counsel for the appellant alleges that the verdict was insufficient because the jury "found" the defendants guilty instead of saying that they "were" guilty, but we think that finding the defendants guilty means that they were actually guilty.

Most of the comments of the counsel on the instructions of the court are founded on the same misconceptions that lead him to criticise the information, and it is needless to discuss them in detail. We have read the instructions with care, and they seem to have omitted no material point which it was necessary or advisable for the jury to know. No exception was taken to the charge of the court in any manner, and we think the instructions rendered were entirely without error.

Under the seventh ground for reversal the counsel contends that the defendant Alicea was not tried with the others. By virtue of section 283 of the Code of Criminal Procedure this matter is left to the discretion of the trial judge, and we find no abuse of discretion.

Neither can we find any error in the manner in which the jury was drawn. Section 199 of the Code of Criminal Procedure limiting the number to 24 only relates to the jurors in attendance for regular trial at the district court. The record shows that these 24 men were in attendance. After this panel

was exhausted there was nothing in the Code to prevent the court from selecting other jurors for the regular trial jury. Section 202 permits the court to summon jurors other than regular ones in certain specific cases, and that section is an indication of the discretion which resides in the court. This objection, however, to have availed the appellants should have been made the subject of a challenge to the panel as prescribed in section 218 of the Code of Criminal Procedure. There is nothing to show that any challenge was made. The case of *The People* v. *Johnson,* reported in 104 California, page 418, as well as the words of the Code itself, is authority for deeming that the defendant waived any supposed irregularities in the constitution of the jury.

These are the principal points made by the attorney for the appellants, but we have also examined the judgment-roll to see if any fundamental error exists therein, and having found none, the judgment of the District Court of Humacao must be affirmed.

*Affirmed.*

Chief Justice Quiñones, and Justices Hernández, Figueras and MacLeary concurred.